**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | **Case No. 22-42839-169** |
| **SHANE DANIEL BAUR,** | **Chapter 7** |
| Debtor. | |
| In re: | **Case No. 22-43067-659** |
| **CATHERINE G. CARLISLE,** | **Chapter 7** |
| Debtor. | |
| In re: | **Case No. 22-43173-169** |
| **BRIANNA LATRESE PRATT,** | **Chapter 7** |
| Debtor. | |
| In re: | **Case No. 22-43177-169** |
| **LANCE TEREL PERRYMAN,** | **Chapter 7** |
| Debtor. | |
| In re: | **Case No. 22-43672-357** |
| **SHANELLE EULA TIMES,** | **Chapter 7** |
| Debtor. | **FOR PUBLICATION** |

**MEMORANDUM OPINION**

## I.   Introduction

In each of these cases, the Acting United States Trustee for Region 13 (the "U.S. Trustee") filed United States Trustee's Motion for Examination of the Fees of the Debtor's Attorneys and for Imposition of a Civil Penalty Pursuant to 11 U.S.C. §§ 329, 526, and 528, Federal Rule of Bankruptcy Procedure 2017 [*sic*] (collectively, the "Motions"). The Motions concern the engagement agreements between each of the Debtors and the A & L, Licker Law Firm, LLC (the "Firm"). As we describe in detail below, each Debtor entered into two

agreements with the Firm: one executed pre-petition that did not require payment of any attorneys' fees (each a "Pre-Filing Agreement"; collectively the "Pre-Filing Agreements"), and another executed post-petition that required the Debtor to pay $1,462.00 in fees (each a "Post-Filing Agreement"; collectively the "Post-Filing Agreements"; and with the Pre-Filing Agreements, the "Agreements"). Courts and practitioners commonly refer to an arrangement of this type as a "bifurcated" engagement.

The factual and legal issues in these five cases are either identical or substantially similar. The parties filed stipulations addressing the material facts. In the interest of judicial economy, and with the goal of avoiding inconsistent rulings, we set the Motions for a non-evidentiary hearing before this Court *en banc* on June 7, 2023. For the reasons that follow, we grant the Motions in part, deny them in part, and award appropriate relief.

## II.     Jurisdiction and Venue

These are core proceedings under 28 U.S.C. § 157(b)(2)(A) and we have jurisdiction under 28 U.S.C. §§ 157(a) and 1334 and Local Rule of the United States District Court for the Eastern District of Missouri 9.01(B). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a). This memorandum opinion contains our findings of fact and conclusions of law in these contested matters under Federal Rules of Bankruptcy Procedure 9014(c) and 7052.

## III.    Background

### A.     Attorney Compensation in Chapter 7 Bankruptcies

Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), presents challenges for a prospective debtor seeking to retain counsel. Before 1994, Section 330(a) of the Bankruptcy Code authorized courts to award compensation to "the debtor's attorney," to be paid from the assets of the bankruptcy estate. *See* 11 U.S.C. § 330(a) (1986). In a 1994 Bankruptcy Code revision, Congress deleted the quoted phrase in an "apparent legislative drafting error." *Lamie v. United States Trustee*, 540 U.S. 526, 530 (2004). The Supreme Court of the United States described the resulting statute, now Section 330(a)(1), as "awkward, and even ungrammatical," *id.* at 534, but concluded that its plain language prohibits a debtor's attorney from receiving payment from a bankruptcy estate post-petition unless the attorney is also employed by the trustee. *See id.* at 538-39. A debtor's attorney also cannot collect from a debtor post-petition under a pre-petition engagement agreement because that agreement creates a debt that is subject first to the automatic stay and later to the debtor's bankruptcy discharge. *See* 11 U.S.C. § 362(a)(1) (prohibiting actions to recover pre-petition claims against a debtor); 11 U.S.C. § 727(b)

(stating that a discharge operates on all debts arising before the entry of the order for bankruptcy relief).

As a practical matter, therefore, a debtor must pay their attorney in full prior to the commencement of a Chapter 7 case, including for services that the attorney may provide post-petition. This is not possible for some prospective debtors, who simply cannot save enough money in advance to retain counsel. Other prospective debtors may be able to make pre-petition installment payments to their lawyers, but the delay in filing exposes them to creditor actions that may materially worsen their circumstances.

**B.    The 2005 Amendments to the Bankruptcy Code**

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 purportedly was designed "to correct perceived abuses of the bankruptcy system." *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 231-32 (2010). The legislation regulates certain interactions between an "assisted person" and a "debt relief agency," as defined in the Bankruptcy Code. 11 U.S.C. § 101(3), (12A); *Milavetz*, 559 U.S. at 232-33. In the context of the cases now before this Court, those terms refer to a consumer debtor and a consumer debtor's attorney.

At a high level, Section 526 of the Bankruptcy Code prohibits certain acts and omissions by counsel that could be considered abusive; Section 527 requires an attorney to provide written disclosures to a prospective client; and Section 528 requires a written engagement letter and regulates advertisements directed to the public. The U.S. Trustee relies on portions of Sections 526 and 528 in the Motions.

**C.    Bifurcation in General**

Bifurcation represents a potential solution to the problem of payment for a Chapter 7 debtor's attorney. In a bifurcated engagement, the lawyer and the prospective debtor enter into two agreements. The first, executed before the bankruptcy filing, covers the work required to prepare and to file a bankruptcy case. Attorneys using this system often charge a relatively low fee for this work, and in some cases, including the ones before us, charge no fee for these services. The parties enter into the second agreement after the filing, and it covers the remaining work to be done in the case.[1] In theory, this second agreement creates a post-

---

[1] In many cases, including these five, work that customarily occurs pre-petition, such as preparing bankruptcy schedules and the statement of financial affairs, gets included in the

(footnote continued on next page)

petition debt and financial obligation to the attorney that is not subject to the automatic stay or the discharge, so that the attorney may bill and collect fees from the debtor as the case proceeds. *See* David Cox, *Why Chapter 7 Bifurcated Fee Agreements are Problematic*, 40 AM. BANKR. INST. J. 30, 30 (June 2021); Terrence L. Michael, *There's A Storm A Brewin': The Ethics and Realities of Paying Debtors' Counsel in Consumer Chapter 7 Bankruptcy Cases and the Need for Reform*, 94 AM. BANKR. L.J. 387, 395-400 (2020).

Bifurcated agreements have met with mixed results. Some courts find bifurcation acceptable if counsel complies with certain requirements. *See, e.g.*, *In re Cialella*, 643 B.R. 789, 814 (Bankr. W.D. Pa. 2022); *In re Brown*, 631 B.R. 77, 95-103, 105 (Bankr. S.D. Fla. 2021). Others disagree, concluding that bifurcated agreements are illusory, duplicitous, or otherwise impermissible. *See In re Suazo*, 655 F. Supp. 3d 1094, 1110-11 (D. Colo. 2023) ("*Suazo II*"); *In re Rosenschein*, 651 B.R. 677, 691 (D.S.C. 2023); *In re Siegle*, 639 B.R. 755, 758-59 (Bankr. D. Minn. 2022). In still other cases, judges found it unnecessary to decide whether bifurcation is generally appropriate because attorneys have violated other federal or local rules. *See, e.g.*, *In re Kolle*, 641 B.R. 621, 686-87 (Bankr. W.D. Mo. 2021). A decision of the Bankruptcy Appellate Panel in our Circuit falls within this last category. *See In re Allen*, 628 B.R. 641, 643, 645-46 (B.A.P. 8th Cir. 2021) (finding fees unreasonable under Federal Rule of Bankruptcy Procedure 2017(a) and (b) where attorney charged clients more under bifurcated arrangements than he charged clients who paid in advance).

In 2022, the Acting Director of the Executive Office for United States Trustees issued a memorandum entitled Guidelines for United States Trustee Program (USTP) Enforcement Related to Bifurcated Chapter 7 Fee Agreements (the "UST Memorandum"). Memorandum from Ramona D. Elliot, Acting Director, Executive Office for U.S. Trustees, to United States Trustees (June 10, 2022) (https://www.justice.gov/ust/page/file/1511976/dl?inline). Its principal conclusion is:

> Absent contrary local authority, it is the USTP's position that bifurcated fee agreements are permissible so long as the fees charged under the agreements are fair and reasonable, the agreements are entered into with the debtor's fully informed consent, and the agreements are adequately disclosed.

UST Memorandum at 2. The UST Memorandum acknowledges that it is an internal directive for United States Trustees and employees of the USTP and that "the final determination of

---

post-petition agreement. This structure helps counsel keep any pre-petition fee to a minimum, but it may burden the debtor with a correspondingly large post-petition obligation.

whether a bifurcated fee agreement complies with the Bankruptcy Code and Rules resides solely with the court." *Id.* at 6. All four qualifications included in the UST Memorandum—local authority, reasonableness of fees, informed consent, and adequate disclosure—are relevant issues in these cases, so we view the UST Memorandum as lacking any independent persuasive force here.

**D.    Local Rule 2093(C)(3)**

This Court's Local Rules have regulated the scope of an attorney's engagement for many years. Local Rule of Bankruptcy Procedure for the United States Bankruptcy Court for the Eastern District of Missouri 2093(C)(3) ("Local Rule 2093(C)(3)") states:

> Regardless of which chapter of the Bankruptcy Code the case is under, debtor's counsel must provide all legal services necessary for representation of the debtor in connection with the bankruptcy case until conclusion of the case, except for, at the discretion of debtor's counsel, representation of the debtor in an adversary proceeding and/or appeal, for the fee set forth in the attorney fee disclosure statement filed with the Court pursuant to L.R. 2016-1(A). 'Unbundling' of legal services or any similar arrangement is prohibited, and debtor's counsel must not include any language in the attorney fee disclosure statement or in a client agreement that contradicts or is inconsistent with this Rule.

L.R. 2093(C)(3). This rule protects debtors who retained and paid lawyers from having to represent themselves in post-petition matters. The only exceptions—adversary proceedings and appeals—are both relatively rare and relatively time-consuming, and it would be difficult in most cases for a lawyer and client both to anticipate and to pre-fund the associated fees before a bankruptcy case commences.

The U.S. Trustee has not alleged that the Firm violated Local Rule 2093(C)(3) in these cases. We discuss the rule here because it plays a key role in the structure and contents of the Agreements between the Firm and the Debtors, to which we now turn.

E.      The Pre-Filing and Post-Filing Agreements

As discussed above, the Firm and each Debtor entered into two agreements, which we refer to as the Pre-Filing Agreement and the Post-Filing Agreement. Doc. 15, Exhs. 1-2.[2] The parties stipulated to the authenticity of each of the Agreements. Doc. 30 at 4, ¶ 13. The Firm used the same forms of Agreements with each of the Debtors.

1.      Pre-Filing Agreement

Each Pre-Filing Agreement includes more than eight pages of single-spaced text, with additional space between paragraphs. The initial section of the Pre-Filing Agreements starts by defining four categories of services that are or might be involved in a Chapter 7 representation: "Pre-Filing Services," "Post-Filing Services," "Supplemental Post-Filing Services," and "Excluded Services." Pre-Filing Agreement at 1-2.

The services listed under Pre-Filing Services include (a) meeting and consulting with the debtor as needed prior to filing the case; (b) analyzing the information from the debtor's intake questionnaire and other documents; (c) performing a pre-petition inquiry to determine the bankruptcy chapter(s) for which the debtor qualifies, explaining the benefits of each chapter, and providing guidance in choosing the chapter befitting the debtor's situation; (d) providing due diligence, legal analysis, and legal advice to help the debtor make legal choices and to comply with the Bankruptcy Code and Federal Rules of Bankruptcy Procedure; and (e) preparing and filing a Chapter 7 voluntary petition, statement about social security numbers, pre-filing credit counseling certificate, and list of creditors. Pre-Filing Agreement at 1.

The Post-Filing Services section of each Pre-Filing Agreement begins with the following disclaimer in bold type:

**Our law firm will provide to you any legal service required by the local rules of the bankruptcy court. Complying with Local Rule 2093 C 3 *[sic]*, our attorney and staff will provide all legal services necessary for representation**

---

[2] Unless otherwise specified, citations to documents in the record, including the Pre- and Post-Filing Agreements, are to the numbered documents on this Court's docket in the *Baur* case, Case No. 22-42839. For the purposes of this opinion, there are no substantive differences between the filings in the *Baur* case and those in the other cases, including the language in the Agreements. Using that convention, citations to the "Pre-Filing Agreement" are to Doc. 15, Exh. 1 in *Baur* and citations to the "Post-Filing Agreement" are to Doc. 15, Exh. 2 in *Baur*.

**of you in connection with the bankruptcy case until conclusion of the case regardless of you signing a post petition agreement or making post petition payments. We will handle your case from start to finish unless the bankruptcy court allows us to withdraw for important reasons or you terminate our services.**

Pre-Filing Agreement at 1. Similar language appears in four other locations in each Pre-Filing Agreement. *Id.* at 4, 5, 6, 9. Four of the five discussions of the Firm's agreement to provide services cite Local Rule 2093(C)(3). *Id.* at 1, 4, 5, 6.

The Pre-Filing Agreement then discloses that Post-Filing Services include (a) preparing and filing the debtor's bankruptcy schedules and statement of financial affairs; (b) preparing and filing the debtor's means-test calculations and disclosures; (c) conducting a second appointment for the debtor to review and sign the statements and schedules; (d) preparing for and attending the Section 341 meeting of creditors; (e) administering and monitoring the case and communicating with the debtor during the process; (f) forwarding any trustee questionnaire and other documents to the trustee; (g) notifying the debtor's employer to stop any garnishments; (h) reviewing and responding to trustee requests; (i) reviewing and advising the debtor about any motions for stay relief; (j) reviewing and advising the debtor about reaffirmation agreements or redemptions; and (k) reviewing and advising the debtor about any "creditor violations." Pre-Filing Agreement at 1-2.

The Pre-Filing Agreement also references Supplemental Post-Filing Services. Pre-Filing Agreement at 2. The Pre-Filing Agreement lists these as (a) reviewing and advising about any turnover demands from the trustee; (b) attending any continued meetings of creditors; (c) advising about and attending any Rule 2004 examinations; (d) reviewing and advising the debtor regarding any U.S. Trustee audit; (e) preparing and filing any claims or objections to claims; (f) reviewing and advising the debtor about lien-avoidance matters; (g) drafting and/or negotiating a reaffirmation agreement and attending any related hearing; (h) preparing and filing any amendments to the schedules and statements; and (i) preparing and filing any motion to reinstate the case. *Id.* at 2. The Pre-Filing Agreement does not explain any distinction between—or any basis for a distinction between—these "supplemental" services and the other Post-Filing Services described in the preceding paragraph.

Finally, the Pre-Filing Agreement identifies Excluded Services that the Firm does not agree to provide, specifically: (a) representing the debtor in any adversary proceedings,

dischargeability actions, or other contested bankruptcy matters;[3] (b) representing the debtor in any municipal, county, state, or other local court matters; (c) representing the debtor in any tax matters; (d) representing the debtor in any student loan discharge efforts; and (e) pursuing any creditor violations of the automatic stay, discharge injunction, or Fair Credit Reporting Act. Pre-Filing Agreement at 2.

The second section of the Pre-Filing Agreements addresses payment of the filing fee for a bankruptcy case and presents a client with two payment options for attorneys' fees. Pre-Filing Agreement at 2-4. The first option is described as "Pay Before You File." If the client selects that option, they pay $1,462.00 in attorneys' fees before the Firm files their Chapter 7 case, the Firm provides the Pre-Filing Services and Post-Filing Services, and the Firm provides the Supplemental Post-Filing Services for no additional charge. *Id.* at 3. In this situation, the Pre-Filing Agreement alone governs the parties' relationship and, in its fee structure at least, the Pay Before You File option resembles a typical Chapter 7 engagement.

Alternatively, the client could select the "File Now Pay Later" option. Pre-Filing Agreement at 3-4. The Pre-Filing Agreement states that the attorneys' fees for File Now Pay Later would be the same amount as under the Pay Before You File option, *i.e.*, $1,462.00, but the Firm would "split our work for you into two separate agreements in order to offer you the ability to pay after your case is filed." *Id.* at 3. This option limits the Pre-Filing Agreement to the Firm's provision of the Pre-Filing Services and sets the associated fee at zero. *Id.* The Pre-Filing Agreement states that, after the case is filed, the client will have three choices: (1) proceed as a self-represented debtor; (2) hire a new attorney to complete the case; or (3) "[w]ithin ten (10) days after [the] case is filed, . . . enter into a Post-Filing Agreement" with the Firm. *Id.* at 3-4. If the client chooses to enter into the Post-Filing Agreement, the Firm will then provide the Post-Filing Services and Supplemental Post-Filing Services for a fee of $1,462.00. *Id.* at 4. The Pre-Filing Agreement discloses that the client would have as long as twelve months to pay that fee. *Id.*

One of the five references to the Firm's obligations under Local Rule 2093(C)(3) appears in the discussion of the three post-petition options on page 4 of the Pre-Filing

---

[3] "Contested matter" is a term of art in bankruptcy that essentially includes any dispute that is not an adversary proceeding. *See Bullard v. Blue Hills Bank*, 575 U.S. 496, 505 (2015); FED. R. BANKR. P. 9014. The Firm's exclusion of "other contested bankruptcy matters" from its scope of services may violate Local Rule 2093(C)(3), but we address the Firm's exclusion of contested matters only in the context of the arguments presented in the Motions.

Agreement. Because it is slightly more expansive than the example quoted above, we reprint it here:

> Should you not choose any of the options above, we still will provide to you any legal service required by the local rules of the bankruptcy court and 1 U.S.C. § 521(a)(1)(B) *[sic]*, Section 526(c)(2)(B), and L.B.R. 9010-1(c) of the Bankruptcy code *[sic]*. Complying with Local Rule 2093 C 3 *[sic]* and the Bankruptcy Code, we will provide all legal services necessary for representation of you in connection with the bankruptcy case until conclusion of the case regardless of you signing a post petition agreement or making post petition payments. We will handle your case from start to finish unless the bankruptcy court allows us to withdraw for important reasons or you terminate our services.

Pre-Filing Agreement at 4. The legal citations in the first quoted sentence are impenetrable, but the overall message is straightforward: with the possible exception of adversary proceedings and appeals—though this section does not state that exception—the client will receive the full suite of services necessary to complete the bankruptcy case, *even if the client refuses to sign any post-petition agreement or does not pay the Firm post-petition*.

### 2.    Post-Filing Agreement

The Post-Filing Agreement is over seven pages long. It also is mostly single-spaced, and much of it duplicates components of the Pre-Filing Agreement.

In its initial section, the Post-Filing Agreement lumps together what the Pre-Filing Agreement described as Post-Filing Services and Supplemental Post-Filing Services into a single category labeled "The Work Involved to Complete your Chapter 7 Case" that the firm agrees to provide, along with one item that appears here for the first time: "[a]ny legal service required by the local rules." Post-Filing Agreement at 1. The Post-Filing Agreement excludes the same list of services as the Pre-Filing Agreement. *Id.* at 1-2. The next section of the Post-Filing Agreement establishes the $1,462.00 fee that the client agrees to pay, as well as the payment schedule. *Id.* at 2.

The Post-Filing Agreement includes a disclaimer in two different locations, including one immediately above the client's signature line, that states:

> If you choose not to sign this Post-Filing Agreement, we still will provide to you any legal service required by the local rules of the bankruptcy court and 1 U.S.C. § 521(a)(1)(B) *[sic]*, Section 526(c)(2)(B), and L.B.R. 9010-1(c) of the Bankruptcy code *[sic]*. Complying with Local Rule 2093 C 3 *[sic]* and the

Bankruptcy Code, our attorney will provide all legal services necessary for representing you in connection with the bankruptcy case until conclusion of the case regardless of you signing a post petition agreement or making post petition payments. We will handle your case from start to finish unless the bankruptcy court allows us to withdraw for important reasons or you terminate our services.

Post-Filing Agreement at 5, 8. This disclaimer essentially repeats language contained on page 4 of the Pre-Filing Agreement.

### F.    Overview of These Cases

These cases involve five debtors, whom the Firm represented through the course of their Chapter 7 bankruptcy cases: Shane Daniel Baur, Case No. 22-42839, Brianna Latrese Pratt, Case No. 22-43173, Catherine G. Carlisle, Case No. 22-43067, Lance Terel Perryman, Case No. 22-43177, and Shanelle Eula Times, Case No. 22-43672. Each case comprised a straightforward, no-asset Chapter 7 case. None involved an adversary proceeding, an appeal, a reaffirmation agreement, a motion to redeem a creditor's collateral, a motion for turnover, an alleged violation of the automatic stay, an examination under Federal Rule of Bankruptcy Procedure 2004, or any similar time-consuming matter. Each of the Debtors received a timely discharge.[4]

In *Baur*, the parties signed the Pre-Filing Agreement on July 7, 2022. This Court's docket shows filing of a skeletal bankruptcy petition, with a Disclosure of Compensation of Attorney for Debtor(s) on Official Form B2030 ("Form B2030") attached, on September 11, 2022, although the Form B2030 was dated September 8, 2022. The Post-Filing Agreement indicates the parties signed it on September 14, 2022, and the schedules and the statement of financial affairs were filed the same day. The trustee conducted the initial meeting of creditors on October 18, 2022. The Debtor received a discharge on January 26, 2023.

In *Pratt*, the parties signed the Pre-Filing Agreement on August 25, 2022. This Court's docket shows filing of a skeletal petition, without Form B2030, on October 10, 2022. The schedules, statement of financial affairs, and Form B2030 were filed October 21, 2022, although the Form B2030 was dated October 7, 2022. The Post-Filing Agreement indicates

---

[4] We do not mean to suggest that the Firm knew that these would be straightforward cases. Although an appropriate pre-filing investigation should give an attorney a reasonable degree of comfort about the potential complications in a case, unexpected developments can occur. Establishing a fee for a Chapter 7 case is an art, not a science.

the parties signed it on October 29, 2022. The trustee conducted the meeting of creditors on November 15, 2022. The Debtor received a discharge on January 31, 2023.

In *Carlisle*, the parties signed the Pre-Filing Agreement on August 26, 2022. This Court's docket shows filing of a skeletal petition, without Form B2030, on September 29, 2022. The schedules, statement of financial affairs, and Form B2030 were filed October 13, 2022, although the Form B2030 was dated September 15, 2022. The Post-Filing Agreement indicates the parties signed it on December 4, 2022. The trustee conducted the meeting of creditors on November 4, 2022. The Debtor received a discharge on March 8, 2023.

In *Perryman*, the parties signed the Pre-Filing Agreement on September 26, 2022. This Court's docket shows filing of a skeletal petition, without Form B2030, on October 10, 2022. The schedules, statement of financial affairs, and Form B2030 were filed on October 21, 2022, although the Form B2030 was dated October 10, 2022. The Post-Filing Agreement indicates the parties signed it on October 29, 2022. The trustee conducted the meeting of creditors on November 15, 2022. The Debtor received a discharge on January 31, 2023.

In *Times*, the parties signed the Pre-Filing Agreement on November 2, 2022. This Court's docket shows filing of a skeletal petition, with Form B2030 attached, on November 22, 2022, although the Form B2030 was dated November 21, 2022. The Post-Filing Agreement indicates the parties signed it on November 26, 2022. The schedules and the statement of financial affairs were filed the following day. The trustee conducted the meeting of creditors on December 23, 2022. The Debtor received a discharge on June 7, 2023.

Each Form B2030 indicated that the Firm agreed to accept $1,462.00 in legal fees in connection with the associated case, none of which had been paid as of the time the Firm filed the form. Consistent with Local Rule 2093(C)(3), the Firm also stated in each form, in bold type:

> **All legal services necessary for representation of the debtor in connection with the bankruptcy until conclusion of the case will be provided regardless of outstanding attorney fees after filing of the petition.**

Doc. 1 at 8.

The Firm also included a lengthy disclosure about the bifurcated Agreements in each Form B2030. In relevant part, each states:

8.  Counsel offered debtor(s) two options for the payment of counsel's fees: (1) pre-pay the fees in full prior to the Chapter 7 bankruptcy petition being filed, or (2) bifurcate the attorney services into pre- and post-petition work

-11-

in order to facilitate the debtor(s) obtaining the benefit of being filed right away and making payments post-petition for the post-petition work. Counsel does not charge a higher fee for the second option. . . .

. . .

The fee satisfies the reasonableness requirement under Section 329 applying the Lodestar analysis. Both options fully disclosed to debtor(s) and debtor(s) chose the second option.

9. Debtor and counsel entered into two, separate fee agreements for pre- and post-petition work.

   a. The first, pre-petition fee agreement was signed prior to the filing of the petition for the preparation and filing of the bankruptcy petition, statement about social security number, creditor list and other documents required at the time of filing; and review, analysis and advisement of the typical matters that are required to be performed prior to filing by a bankruptcy attorney under the applicable bankruptcy and ethical rules. Counsel's fees paid under the first fee agreement (if any) are shown in Section 1 above as 'Prior to the filing of this statement I have received', and any fees earned but not paid for the pre-petition work were waived by counsel.

   b. The second, post-petition fee agreement was signed after the petition was filed for post-petition work to be performed, including the preparation of schedules of assets and liabilities, and statement of financial affairs; preparation and filing of other required documents; representation at the first meeting of creditors; and other services outlined in the fee agreement. Counsel's fees owed by debtor under the second fee agreement for post-petition work are reflected in Section 1 above as the Balance Due. The second fee agreement allows the debtor(s) to pay these post-petition fees and costs in installments over up to 12 months following the bankruptcy filing.

Doc. 1 at 9.

### G.    The Parties' Contentions

The U.S. Trustee's Motions ask us to void the Pre- and Post-Filing Agreements between the Debtors and the Firm and to order the Firm to refund any fees received on three

-12-

grounds. First, the U.S. Trustee argues that the Agreements do not clearly and conspicuously disclose the services to be provided and the fees to be charged, in violation of Section 528(a)(1) of the Bankruptcy Code. The Firm disagrees, arguing that the Agreements clearly explain the options available to a debtor, including the possibility of obtaining post-petition representation without signing a Post-Filing Agreement.

The U.S. Trustee also alleges that the Firm charged unreasonable fees, in violation of Section 329(b) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2017. In response, the Firm argues that the total amount of its fees is reasonable and that bifurcated cases require more work than cases in which debtors pay in advance.

Finally, the U.S. Trustee argues that the Firm misrepresented the services to be provided to the Debtors, in violation of Section 526(a)(3)(A). The Firm disagrees, arguing that it has not impermissibly limited the scope of its services.

The Firm also makes several arguments broader than any single point advanced by the U.S. Trustee. For example, the Firm asserts that a debtor who signs a Post-Filing Agreement has a contractual relationship with the Firm, which gives the debtor more protection than if they merely relied on the Firm's obligation to provide services under Local Rule 2093(C)(3). Doc. 27 at 4-5. The Firm also argues that the UST Memorandum supports bifurcation and that it had communicated with the U.S. Trustee as it developed the Agreements in an effort to avoid issues.

The U.S. Trustee also requests that we find that the Agreements are part of "a clear and consistent pattern and practice of violations of Section 526" by the Firm and requests imposition of a civil sanction under Section 526(c)(5). Doc. 15 at 20. The Firm disputes that it violated Section 526 at all, much less repeatedly. At hearing, the U.S. Trustee's counsel suggested that a sanction of at least $1,500.00 would be appropriate.

Before the hearing in these matters, we asked the parties to prepare to discuss other provisions of Sections 526 and 528 that might be relevant to the Agreements. Our decision is not grounded in these other provisions or the parties' arguments about them, and so we do not address them here.

Because the Firm already provided all the services required by the Pre-Filing Agreements, and there are no pre-petition fees to refund, it is not clear to us that monetary relief related to the Pre-Filing Agreements would be meaningful or even possible. We thus focus on the Post-Filing Agreements, but the substance of the Pre-Filing Agreements comprises a fundamental part of our analysis.

-13-

## IV.     Analysis

We must determine whether the Firm violated the Bankruptcy Code by using its Pre-Filing Agreement and Post-Filing Agreement. We must apply the Bankruptcy Code as written, "even if we believe the words lead to a harsh outcome." *Lamie*, 540 U.S. at 538.

### A.     The Agreements Are Not Clear and Conspicuous, as Required by Section 528(a)(1)

Section 528(a)(1) of the Bankruptcy Code requires a debt relief agency, including a bankruptcy attorney, to execute a written contract with a debtor that clearly and conspicuously explains the services the agency will provide and the fees and charges for those services. 11 U.S.C. § 528(a)(1); *see Milavetz*, 559 U.S. at 237-38. Any contract that does not comply is "void and may not be enforced by any Federal or State court or by any other person," other than the debtor. 11 U.S.C. § 526(c)(1). One court summarized this principle as follows: "Agreements cannot be sufficiently 'clear' if they make inconsistent statements about what [the attorney] will or will not do for [a debtor] in [a] case." *Siegle*, 639 B.R. at 759.

The U.S. Trustee does not argue that the Firm's Agreements fail to conspicuously explain the services to be provided. Instead, the argument is that the Agreements, whether read independently or in combination, are not "clear." We agree that they are not.

To begin, it is unclear what services a debtor could expect to receive under the Pre-Filing Agreement. The File Now Pay Later option in the Pre-Filing Agreement provides a debtor with three explicit options after the bankruptcy case commences: (1) proceed *pro se* for the remainder of the case; (2) hire a different attorney; or (3) enter into a Post-Filing Agreement. Pre-Filing Agreement at 3-4. This might be sufficiently clear if the universe of possibilities constituted only these three options. But the Firm separately guarantees to "provide all legal services necessary for representation of [the client] in connection with the bankruptcy case until conclusion of the case regardless of [the client's] signing a post petition agreement or making post petition payments." *Id.* at 4. This fourth option's existence—where a debtor receives all legal services necessary for completion of the case without signing a second agreement or paying any fees—is implicit at best. *See Siegle*, 639 B.R. at 759 ("The Agreements as written obscure the reality that execution of the Post-Petition Agreement was not necessary to ensure the provision of legal services.").

Moreover, even if a prospective debtor could discern the *existence* of the fourth option, it is unlikely that a debtor would *understand* the option. The Pre-Filing Agreement states both that a debtor must execute a Post-Filing Agreement to receive Post-Filing and Supplemental Post-Filing Services *and* that the debtor has the right to "all legal services necessary" without

-14-

signing a Post-Filing Agreement.[5] An individual lacking experience in consumer bankruptcy practice would not understand whether one set of services is more expansive than the other. *See In re Reeves*, 648 B.R. 289, 295 (Bankr. D.S.C. 2023) ("[A] layperson is not likely to understand what services are required for a bankruptcy case to be successfully completed.").

The Firm's reservation of the right to withdraw from the representation for "important reasons" under the fourth option amplifies this uncertainty. Pre-Filing Agreement at 1. This qualification is unclear in at least two respects. First, because the Pre-Filing Agreement does not mention the possibility of withdrawal for ethical or other reasons *even if* the client signs the Post-Filing Agreement, the Pre-Filing Agreement implies that the client would receive less comprehensive representation from the Firm under the fourth option. In fact, any truly important reason that might justify the Firm's withdrawal under the fourth option, such as the client's perjury or an irreparable breakdown in communication, would apply equally to any engagement, regardless of whether a client signed a Post-Filing Agreement. And second, a client unfamiliar with legal ethics principles would not understand what a court could or would consider important enough to justify counsel's withdrawal.

One thing is perfectly clear: a client's refusal to sign a Post-Filing Agreement or to pay post-petition legal fees cannot be among the "important reasons" for withdrawal referred to in the Agreements, because the Pre-Filing Agreement states that the Firm will provide legal services "regardless of [the client's] signing a post petition agreement or making post petition payments." Pre-Filing Agreement at 1. Interpreting the Pre-Filing Agreement to permit the Firm to escape this commitment by a vague reference to "important reasons" in the very next sentence would be absurd. *See Midwest Regional Allergy, Asthma, Arthritis & Osteoporosis Ctr., P.C. v. Cincinnati Ins. Co.*, 795 F.3d 853, 856 (8th Cir. 2015) (stating that a specific provision prevails over a general provision under Missouri contract law). Nevertheless, at hearing, the Firm's counsel stated that the Firm might seek to withdraw if a client with the ability to pay chose not to sign the Post-Filing Agreement. A motion on that basis would be groundless, if not frivolous, for the reasons just explained. But if the Agreements' author cannot correctly appreciate their meaning, how can a client lacking legal training possibly understand them? *See In re Suazo*, 642 B.R. 838, 866 (Bankr. D. Colo. 2022) ("*Suazo I*") (describing a similarly

---

[5] We reject the Firm's argument that a debtor who signs a Post-Filing Agreement somehow obtains a contractual commitment from the Firm more robust and valuable than the Firm's obligation to provide "all legal services necessary" under Local Rule 2093(C)(3). As we discuss, the latter comprises not only a rule-based requirement, but also an actual covenant in the Pre-Filing Agreement.

-15-

drafted two-contract arrangement that included a discussion of withdrawal as a "model of misleading confusion"), *aff'd*, 655 F. Supp. 3d 1094 (D. Colo. 2023).

The Post-Filing Agreement also lacks clarity. The five commitments in the Pre-Filing Agreement to provide "all legal services necessary" may help the Firm minimize the chances that it violates Local Rule 2093(C)(3), but they create considerable uncertainty about the services provided to a debtor under the Post-Filing Agreement. In particular, the Firm's undertaking in the Post-Filing Agreement to provide the Post-Filing and Supplemental Post-Filing Services—although those terms do not appear in the Post-Filing Agreement—is legally superfluous. Because the Firm previously contracted to provide a client all necessary services in the Pre-Filing Agreement, the Firm's obligations under the Post-Filing Agreement comprise an empty set.[6] As a functional matter, then, the Post-Filing Agreement does not document an exchange of legal fees for legal services; instead, it obligates the client to pay for services that the Firm agreed to provide pre-petition. *See Siegle*, 639 B.R. at 759 ("In fact, the real purpose of the Post-Petition Agreement is to ensure the collectability of [the attorney's] unpaid legal fees.").

The Firm's disclosures on the Form B2030s compound these problems. All five Form B2030s state that "[t]he second, post-petition fee agreement was signed after the petition was filed." *See, e.g.*, Doc. 1 at 9. However, this Court's docket shows that two of the five disclosure forms were *attached* to the clients' bankruptcy petitions. *Times*, Doc. 1 at 9; *Baur*, Doc. 1 at 9. These two Form B2030s, plus two of the others, bear signatures dated *before* the relevant petition dates. *Times*, Doc. 1 at 10; *Baur*, Doc. 1 at 10; *Carlisle*, Doc. 9 at 56; *Pratt*, Doc. 10 at 44. And in each of the five cases, the Form B2030 has a date *before* the debtor allegedly executed the Post-Filing Agreement. In various ways, therefore, the Form B2030s purport to describe events that had yet to occur.[7] These Form B2030s support our analysis above that

---

[6] The Firm argued at hearing that the Post-Filing Agreement's scope of services is broader than the "all legal services necessary" commitment in the Pre-Filing Agreement. But the Firm did not identify any specific services included in the former, but not the latter, other than administrative work necessitated by bifurcating the engagement. Even if it were appropriate to consider this otherwise avoidable administrative work in the analysis—and the circularity of that logic gives us pause—the Post-Filing Agreement does not clearly and conspicuously describe what the administrative work is or would be.

[7] It appears that the Firm's Form B2030s in these cases violated the statutory prohibition against making "any statement . . . in a document filed in a case or proceeding . . . that is untrue or misleading." 11 U.S.C. § 526(a)(2); s*ee Suazo I*, 642 B.R. at 863-68 (finding similar

(footnote continued on next page)

-16-

the Post-Filing Agreement accomplishes something less than a post-petition exchange of promises between attorney and client that stands independent from the promises exchanged in the Pre-Filing Agreement. The Firm essentially acknowledges as much in its written responses to the Motions, stating that each Pre-Filing Agreement "was entered into with the mutual understanding that Debtor and Debtor's counsel would enter into a post filing agreement." Doc. 19 at 4; *see generally Rosenschein*, 651 B.R. at 691 (holding that the distinction between pre-petition and post-petition agreements was illusory because the pre-petition agreement required clients to certify that they intended to sign the post-filing agreement).

For these reasons, we conclude that the Pre- and Post-Filing Agreements do not clearly describe the services to be provided by the Firm. Thus, they do not comply with Section 528(a)(1).[8]

### B.    The Firm's Fees Are Unreasonable Under Section 329(b)

Section 329(b) of the Bankruptcy Code authorizes courts to cancel a fee agreement or to order a refund of fees to the extent that an attorney's compensation exceeds the reasonable value of their services. 11 U.S.C. § 329(b). Rule 2017 implements the statute, authorizing courts to determine whether fees are "excessive." FED. R. BANKR. P. 2017(b). This analysis involves "the comparison of the amount of compensation received by the attorney with the reasonable value of the services performed." *In re Redding*, 247 B.R. 474, 478 (B.A.P. 8th Cir. 2000) (cleaned up). The Firm has the burden to demonstrate the reasonableness of its fees. *In re Clark*, 223 F.3d 859, 863 (8th Cir. 2000).

---

two-contract arrangement misleading under Section 526(a)(3)). Because the U.S. Trustee has not sought relief on this basis, we only note this issue.

[8] The U.S. Trustee does not discuss other clarity issues apparent in the Agreements. For example, the Post-Filing Agreement paradoxically states "[i]f you wish to cancel this agreement you must notify us in writing of the cancellation within fourteen (14) business days from the date you sign. This Post-Petition Agreement may be canceled in writing at any time." Post-Filing Agreement at 7. The Post-Filing Agreement also states that the Debtors "believe that the File Now Pay Later option is the best choice" and that "the Law Firm reserves the right to not offer the File Now Pay Later option." *Id.* at 4. This language simply does not make sense, because each client allegedly executed the Post-Filing Agreement after the Firm *already* offered the File Now Pay Later option and the client elected it in a Pre-Filing Agreement.

We agree with the U.S. Trustee that the Firm has not shown that all of its fees in these cases were reasonable. In a typical case involving Section 329(b), we would need to determine what would have been a reasonable fee for the Firm to charge and then direct the Firm to return the excess to the Debtors. *See Redding*, 247 B.R. at 478-79. However, this would not be a meaningful exercise in these cases because of our disposition of the Section 528(a)(1) claim above. We thus forgo an extended analysis of the reasonableness of the Firm's fees and turn to the U.S. Trustee's claim under Section 526, which could lead to a broader remedy.

### C.    The U.S. Trustee Has Not Demonstrated That the Firm Misrepresented Its Services in Violation of Section 526(a)(3)(A)

Section 526(a)(3)(A) of the Bankruptcy Code provides that a debt relief agency may not "misrepresent . . . directly or indirectly, affirmatively or by material omission . . . the services that such agency will provide." 11 U.S.C. § 526(a)(3)(A). Section 526(a)(3)(A)'s prohibition on misrepresentation covers some of the same ground as Section 528(a)(1)'s clarity requirements, but there are distinctions. Congress used different language in the two statutes to describe the behavior that violates each statute. As a result, a document with a description of legal services that is not "clear," as required by Section 528(a)(1), does not necessarily "misrepresent" the attorney's willingness or obligation to provide those services or violate Section 526(a)(3)(A). Moreover, Section 526 violations may lead to civil penalties, but Section 528 violations do not, which suggests that the former involves more egregious conduct. *See* 11 U.S.C. § 526(c)(5).

The U.S. Trustee has the burden to prove a violation of Section 526(a)(3). *See In re Carr*, 591 B.R. 474, 477-78 (Bankr. M.D. Fla. 2018). The U.S. Trustee contends that the Pre-Filing Agreements' treatment of the Post-Filing Services and Supplemental Post-Filing Services comprises a misrepresentation because a client "reasonably could conclude from these provisions that the . . . Firm would continue to represent [the client] post-petition if and only if [the client] signed the post-filing agreement and [agreed to pay] the fees described therein." Doc. 15 at 19.

Several courts concluded that similar agreements contained misrepresentations because they failed to disclose counsel's obligation to continue providing services unless the court authorized counsel to withdraw from the case. *See Suazo II*, 655 F. Supp. 3d at 1111; *Siegle*, 639 B.R. at 758-59. But in these cases, the Firm stated five times in the Pre-Filing Agreement that it would continue to provide services even if the client did not execute the Post-Filing Agreement. Pre-Filing Agreement at 1, 4, 5, 6, 9. As we discussed, this results in a lack of clarity, but not necessarily a misrepresentation.

At hearing, we discussed another potential misrepresentation. The Firm attempted to exclude "other contested bankruptcy matters" from the scope of its responsibilities under both Agreements, which Local Rule 2093(A)(3) prohibits. Pre-Filing Agreement at 2; Post-Filing Agreement at 1-2. This is an inaccuracy, but it is not obvious that it is a misrepresentation for purposes of Section 526(a)(3)(A).

Section 526 provides some guidance on the meaning of "misrepresent." Section 526(a)(1) prohibits counsel from "fail[ing] to perform any service" that they agreed to provide, while Section 526(a)(2) prohibits counsel from making "any statement . . . that is untrue or misleading" in a filed document. 11 U.S.C. § 526(a)(1), (2). An attorney might violate either of these subsections by making a simple mistake, such as by inadvertently including something in an engagement agreement or forgetting that it is there, or perhaps by unintentionally stating something that is inaccurate. But the juxtaposition of these requirements with "misrepresent" in Section 526(a)(3)(A) suggests that the latter requires something more than a lack of clarity or an error. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017) ("[U]sually at least, when we're engaged in the business of interpreting statutes we presume differences in language like this convey differences in meaning."); *accord BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994) (discussing difference between "fair market value" and "reasonably equivalent value").

We look to the common law to determine what else Section 523(a)(3)(A) requires. Common-law terms of art imported into the Bankruptcy Code "imply elements that the common law has defined them to include." *Field v. Mans*, 516 U.S. 59, 69 (1995). The common law generally permits an action on a misrepresentation only if the speaker has fraudulent intent, in the case of fraudulent misrepresentation, or if the speaker is negligent, in the case of negligent misrepresentation. *See* DAN B. DOBBS, PAUL T. HAYDEN & ELLEN M. BUBLICK, THE LAW OF TORTS §§ 664, 666 (2d ed. 2011) (discussing the generally accepted elements of fraudulent misrepresentation and negligent misrepresentation); Samuel Williston, *Liability for Honest Misrepresentation*, 24 HARV. L. REV. 415, 415-16 (1911) ("Misrepresentation will call up to a lawyer's mind, primarily, the action on the case for deceit, and the requirements of a proper declaration in that action."); Francis H. Bolen, *Misrepresentation as Deceit, Negligence, or Warranty*, 42 HARV. L. REV. 733, 734-35 (1929) ("While a large number of American jurisdictions . . . require conscious dishonesty as the basis of an action of deceit, many of them have rejected it and permit recovery against a defendant who honestly believes that he has told the exact truth."). Judges of this Court and others have interpreted the similar term "false representation" used in Section 523(a)(2)(A) to require intent to deceive or defraud a creditor. *See In re Wiethuchter*, 147 B.R. 193, 198 (Bankr. E.D. Mo. 1992); *In re Young*, 91 F.3d 1367, 1375 (10th Cir. 1996). Other courts take a different view. S*ee In re Kinard*, 621 B.R. 231, 244 (W.D. Mo. 2020) (finding that negligent misrepresentation claims are cognizable

-19-

under § 523(a)(2)(A)), *aff'd on other grounds*, 998 F.3d 352 (8th Cir. 2021). Whether Section 526(a)(3)(A) requires intent to deceive is an interesting question, but we need not answer it in these cases.

Instead, we look to another common law requirement of a misrepresentation: that it cause loss. *See generally* RESTATEMENT (SECOND) OF TORTS § 546 (AM. L. INST. 1977) (stating that defendant is liable for fraud if plaintiff's "reliance is a substantial factor in determining the course of conduct that results in [the] loss"); *id.* § 552B(1) (plaintiff may recover for "pecuniary loss . . . of which the [negligent] misrepresentation is a legal cause"). Because the evidence in the record does not demonstrate any harm caused by the Firm's misstatements regarding its services, we conclude that the Firm did not violate Section 526(a)(3)(A).

The analysis is straightforward on the U.S. Trustee's contentions about inappropriate exclusion of "other contested bankruptcy matters." Nothing in the record indicates that the Firm denied any of the Debtors legal assistance or charged them additional fees for any contested matter. The Firm's actions might implicate Section 526(a)(3) (and would implicate Section 526(a)(1)) if the Firm had promised to provide a service and then refused to render it. But where, as here, an attorney under-promises and overperforms, the existence of a misrepresentation is far from obvious. Absent evidence that the Firm used the exclusion of "other contested bankruptcy matters" from the Agreements to take advantage of a client, to extract additional fees, or to do something comparable, we cannot conclude that its inaccurate description of its services equates to a misrepresentation.

Similar analysis applies to the claim that the Firm misrepresented the circumstances where it would provide the Post-Filing Services and Supplemental Post-Filing Services in the Agreements. The record lacks evidence that any of the Debtors misunderstood the Agreements' terms. The Debtors may have executed the Post-Filing Agreements because they did not recognize or understand the fourth option we discuss above, but other plausible explanations exist. For example, the Debtors may have recognized that they could receive post-petition representation from the Firm for free, but nevertheless believed that compensating the Firm for its efforts was the right thing to do. We cannot say that the Pre-Filing and Post-Filing Agreements were so obviously misleading or coercive that any reasonable client would have felt compelled to sign the Post-Filing Agreement, and nothing in the record permits us to conclude that the description of services caused harm to the Debtors or anyone else.

For these reasons, we conclude that, although the Firm's explanation of the services it agreed to provide to the Debtors was unclear, as well as inaccurate in certain respects, the U.S. Trustee has not shown that the Firm misrepresented the services it would provide for purposes of Section 526(a)(3)(A).

## V.    Remedies

We now address the results of our findings in these matters. Because the Post-Filing Agreements violate Section 528(a)(1) of the Code, they are void under Section 526(c)(1), and no person or court can enforce them, other than the Debtors. Moreover, because the Firm's violation of Section 528 was at least negligent, it is liable to the Debtors for any fees and charges the Firm received from them. *See* 11 U.S.C. § 526(c)(2)(A). Although our analysis of the merits might justify ordering the same relief as to the Pre-Filing Agreements, those agreements are no longer executory, and the Firm received no fees under them. Thus, we cannot award any meaningful relief regarding the Pre-Filing Agreements.

Next, the Firm's obligation to refund all amounts received from the Debtors under Section 528(a)(1) means that we need not determine what portion of any fees qualifies as reasonable under Section 329(b). Finally, because we concluded that the Firm did not violate Section 526(a)(3), no basis exists to award a civil penalty under Section 526(c)(5).

## VI.    Conclusion

We recognize the difficulty that many debtors experience in hiring competent counsel during times of financial distress. After all, most individuals who have substantial funds available have no need of bankruptcy relief. Our collective experience has shown us that debtors who do not have the benefit of legal assistance find the bankruptcy process daunting, frequently do not obtain discharges, and suffer other hardships during their cases.

We view bifurcated fee agreements as an effort to address this substantial problem of access to justice. Although we are sympathetic, the Bankruptcy Code as currently drafted, other rules, and existing precedent require us to comply with statutory language that gives other considerations more weight. Not the least of these is our Local Rule 2093(C)(3), which is designed to protect debtors against abandonment by their counsel.

Congress could remedy this situation. Among other things, it could except bankruptcy attorneys' fees and expenses, whether incurred pre- or post-petition, from discharge, or it could reverse its 1994 modification of Section 330 of the Bankruptcy Code to permit counsel to be paid from the bankruptcy estate. Congress has declined to address these issues in the more than twenty years that have passed since the Supreme Court issued its ruling in *Lamie*. However, as members of the judicial branch, we cannot alter the Bankruptcy Code or choose to ignore existing precedent controlling these matters.

For the reasons stated in this opinion, we will enter orders in each of these cases granting the Motions in part and denying them in part. We will (1) declare the Post-Filing Agreements void and unenforceable by any person other than the Debtors; (2) require the

Firm to notify its payment processor in writing of this Court's decision within three business days, accompanied by a copy of this opinion; (3) require the Firm to file a certificate of service in each case demonstrating that the Firm provided that notice to its payment processor; (4) require the Firm to file an accounting of all fees and expenses received in each case; (5) require the Firm to refund any fees and charges received from the Debtors to each of them within 90 days; and (6) require the Firm to file a notice in each case certifying that any refund has been provided to the applicable Debtor.


DATED: March 29, 2024                          BONNIE L. CLAIR
St. Louis, Missouri                            Chief United States Bankruptcy Judge


DATED:  March 29, 2024                         KATHY A. SURRATT-STATES
St. Louis, Missouri                            United States Bankruptcy Judge


Dated:  March 29, 2024
St. Louis, Missouri                            Brian C. Walsh
                                               United States Bankruptcy Judge


Copies to:

**Shane Daniel Baur**
4405 W Pine Blvd Apt 707
Saint Louis, MO 63108

**Catherine G Carlisle**
1258 Rockridge Place
Saint Louis, MO 63122

**Brianna Latrese Pratt**
3844 Blaine Ave, Apt #A
Saint Louis, MO 63110

**Lance Terel Perryman**
5159 Ashland Ave
Saint Louis, MO 63115

**Shanelle Eula Times**
11491 Las Ladera Dr
Florissant, MO 63033

**Tobias Licker**
Law Offices of Tobias Licker LLC
1861 Sherman Dr.
St. Charles, MO 63303

**Joseph Wallace Moriarty, Jr**
A & L, Licker Law Firm
1861 Sherman Dr
St. Charles, MO 63303

**Kristin J Conwell**
Conwell Law Firm LLC
PO Box 56550
St. Louis, MO 63156

**D Matthew Edwards**
Burns Taylor Heckemeyer Green & Edwards
733 N Main
PO Box 67
Sikeston, MO 63801

**Carole J. Ryczek**
Office of the U. S. Trustee
11 South 10th Street, Suite 6.353
St. Louis, MO 63102

**Atlas Acquisitions LLC**
Attn: Avi Schild
492C Cedar Lane, Ste 442
Teaneck, NJ 07666